# EXHIBIT D

STATE OF NEW YORK
SUPREME COURT : COUNTY OF ERIE

THE POWER AUTHORITY OF THE
STATE OF NEW YORK, *ex rel.* SOLAR
LIBERTY ENERGY SYSTEMS, INC.,

        Plaintiff,

- vs -

ADVANCED ENERGY INDUSTRIES, INC.,

        Defendant.

CONFIDENTIAL
<u>FILED UNDER SEAL</u>

<u>AMENDED COMPLAINT</u>

Index No. 816076/2018

Plaintiff Power Authority of the State of New York, by and through *qui tam* Relator, Solar Liberty Energy Systems, Inc., brings this action under the New York False Claims Act (codified at New York State Finance Law §187 et seq.) to recover from Defendant Advanced Energy Industries, Inc. all damages, penalties, and other remedies available under the New York False Claims Act on behalf of Plaintiff New York Power Authority and itself and in connection herewith will show to the Court the following:

## PARTIES

1. Plaintiff Power Authority of the State of New York ("Plaintiff" or "New York Power Authority") is a public authority of the State of New York and is chartered pursuant to Article 5, Title 1 of the New York Public Authorities Law.

2. Relator Solar Liberty Energy Systems, Inc. ("Solar Liberty") is a New York corporation with a principal place of business at 6500 Sheridan Drive, Suite 120, in the Town of Amherst, County of Erie, State of New York.

3. Defendant Advanced Energy Industries, Inc. ("Advanced Energy") is a Delaware corporation with a principal place of business at 1625 Sharp Point Drive, in the City of Fort Collins, State of Colorado.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to the New York False Claims Act, as codified at Article XIII of New York's State Finance Law (§ 187 et seq. therein).

5. This Court has personal jurisdiction over the Defendant pursuant to the long-arm provisions of CPLR 302.

6. Venue is proper in this Court pursuant to CPLR 503.

7. This Court's jurisdiction is also properly invoked inasmuch as Relator Solar Liberty, through its officers and employees, is the original source of and has direct and independent knowledge of all information on which the allegations herein are based and will otherwise comply with and satisfy all applicable requirements of the New York False Claims Act.

## FACTS COMMON TO ALL CLAIMS

8. Relator Solar Liberty is a premier developer and installer of renewable energy technologies in the United States and has substantial expertise with photovoltaic electric generation systems, commonly referred to as solar systems.

9. At all times relevant to this complaint, Defendant Advanced Energy was in the business of making and selling solar inverters. Solar inverters are an integral

component of solar systems. Inverters convert the variable voltage direct current (DC) output of a photovoltaic (PV) solar panel into fixed voltage alternating current (AC). That AC electricity can then be incorporated into a local power grid and used to decrease the electric demand of the local solar photovoltaic system owner.

10. Beginning in and around November 2014 and then through August 2015, Relator Solar Liberty entered into a series of related contracts that called for the design, engineering, procurement, and construction of solar systems to be installed on the roofs of approximately 16 public schools located throughout New York City ("NYC Public School Solar Systems"). The contracts were entered into between Relator Solar Liberty and Plaintiff New York Power Authority and are collectively referred to hereinafter as the "NYPA Contracts."

11. Relator Solar Liberty needed to procure solar inverters as part of its obligation to develop the NYC Public School Solar Systems under the NYPA Contracts.

12. Through a purchase order numbered 1587 and dated December 18, 2014, Relator Solar Liberty purchased from Defendant Advanced Energy twenty-two (22) "3TL 20kW — Gen 1 three-phase string inverters" and "forty-one (41) 3TL 24kW — Gen 1 three-phase string inverters" for the NYC Public School Solar Systems.

13. Through purchase order numbered 1806 and dated August 27, 2015, Relator Solar Liberty purchased from Defendant Advanced Energy an additional sixteen (16) "3TL 20kW — Gen 1 three-phase string inverters" and fifty (50) "3TL 24kW — Gen 1 three-phase string inverters" for the NYC Public School Solar Systems.

14. Relator Solar Liberty paid for the aforesaid inverters with funds received from the New York Power Authority pursuant to the NYPA Contracts.

15. Relator Solar Liberty thereafter installed the inverters that it bought from Defendant Advanced Energy as components of the NYC Public School Solar Systems, as part of a joint program undertaken by the New York Power Authority as well as the New York City Department of Citywide Administrative Services, as incentivized by the New York State Energy Research and Development Authority.

16. Soon after installation, Defendant Advanced Energy's inverters began to experience widespread and persistent failures, which failures resulted in loss of power generation and significant and ongoing repair costs.

17. Unbeknownst to Relator Solar Liberty, the widespread and persistent defects associated with Defendant Advanced Energy's inverters were well-known to, and actively concealed by, Defendant Advanced Energy for a significant period of time prior to Relator Solar Liberty's purchase of the same.

18. Both prior to and after its sales of inverters to Relator Solar Liberty, Advanced Energy knowingly misrepresented to customers, including to Relator Solar Liberty, that these inverters would experience a product-wide failure rate of approximately 4%. In making that misrepresentation to customers, Advanced Energy knew that the inverters' actual and established product-wide failure rate was approximately 50%.

19. Indeed, since at least as early May 2014, Defendant Advanced Energy's inverters suffered from excessively high failure rates due to design flaws and/or manufacturing defects.

20. On information and belief, Defendant Advanced Energy was at all times aware of the excessively high failure rates of its inverters.

21. Defendant Advanced Energy was at all times aware that the excessively high failure rate of its inverters was due to various defects associated with the inverters.

22. Defendant Advanced Energy actively concealed its knowledge of the defects associated with its inverters when it sold them to Relator Solar Liberty.

23. On information and belief, Defendant Advanced Energy was planning to exit the solar power industry at or around the time that it made the subject sales to Relator Solar Liberty. Given its plans to exit the industry, Advanced Energy opted not to address and resolve the known material defects associated with its inverters.

24. Advanced Energy opted not to resolve the aforesaid defects based on its own economic self-interest and despite its knowledge of the hazards and dangers posed by its defective inverters.

25. When Advanced Energy's inverters fail, the top or cap affixed to the element is sometimes forcibly blown off the inverter and can travel a significant distance.

26. Advanced Energy was aware that its inverters were prone to failing in this manner before it sold them to Relator Solar Liberty.

27. Advanced Energy was aware that Relator Solar Liberty intended to use the inverters for installations on the rooftops of school buildings.

28. Advanced Energy never advised Relator Solar Liberty of the known hazards associated with the caps blowing off the tops of the inverters that it sold to Relator Solar Liberty.

29. Advanced Energy represented to Solar Liberty that the inverters were suitable for use in connection with electrical systems that are commonplace in the United States. Solar Liberty reasonably relied on such representations. Advanced Energy made such representations to Solar Liberty knowing that they were false. In point of fact, the inverters had been engineered for use in European markets where electrical systems are quite different from those in the United States.

30. Advanced Energy represented to Solar Liberty that the inverters had a 500 Volt DC maximum rating. Solar Liberty reasonably relied on such representations in purchasing and using the inverters at the NYC Public Schools Solar Systems project. Advanced Energy made such representations to Solar Liberty knowing that they were false. In point of fact, and as Defendant Advanced Energy well knew, certain of the Advanced Energy inverters were designed to have internal DC Voltage up to 1000 Volts during standard operation.

31. The presence of such high DC voltage levels in the inverters is due to defects that are known only to Defendant Advanced Energy. The presence of such high DC voltage makes the inverters hazardous to those who service them as well as those who live, work, or attend school near locations where the inverters are installed.

32. In response to the persistent and widespread failures of its inverters, Defendant Advanced Energy at times provided customers, although not Relator Solar Liberty, with so-called "restraint kits" that were purportedly designed to prevent the inverters' caps from blowing off. These restraint kits were inadequate to resolve the hazards associated with the inverters and, of course, did nothing to resolve the undisclosed and latent defects that were causing approximately half of all Advanced Energy inverters to fail in the first place.

33. At least one technical employee of Advanced Energy sought to create computer software in order to help Defendant Advanced Energy's customers address and fix the pervasive failures associated with the inverters. Advanced Energy discouraged such efforts on the part of its employees and advised them that the inverters were neither fixable nor worth fixing.

34. While Advanced Energy's management was telling its employees not to bother with fixing the inverters, the story that Advanced Energy told to customers like Relator Solar Liberty was quite different. When Relator Solar Liberty would contact Defendant Advanced Energy with complaints and concerns regarding the inverters' pervasive failures, Defendant Advanced Energy repeatedly assured Relator Solar Liberty that the problems with the inverters were fixable and would be fixed.

35. Both prior to and following Solar Liberty's purchases of the inverters, Defendant Advanced Energy's customer service representatives were inundated with telephone calls and other communications regarding critical failures of the Advanced Energy inverters. Defendant Advanced Energy did not disclose these issues and failures to Relator Solar Liberty, and instead continued to represent to Relator Solar

Liberty that the inverters were merchantable and of good quality, and that any failures could be fixed.

36. Defendant Advanced Energy failed and refused to provide its support technicians with the information and guidance that they needed in order to assist customers with the problems that they encountered with the inverters.

37. When customers called with problems or complaints regarding the inverters' performance, Defendant Advanced Energy encouraged its support technicians to ask for purported "error codes" from the inverters' display screens. Defendant Advanced Energy did so despite the fact that it knew that the error codes were meaningless and bore no relation to any issues or problems that an inverter might be having. Advanced Energy engaged in this practice in order to deceive its customers and delay the process of addressing the defects associated with its inverters.

38. Likewise, Defendant Advanced Energy encouraged its support technicians to respond to customer complaints with an instruction for the customer to re-install or update the inverter's firmware. Defendant Advanced Energy did so despite the fact that it knew that a reinstallation or update of the inverter's firmware would not remedy or resolve the problems or issues that an inverter was experiencing. Rather, Defendant Advanced Energy encouraged this sort of response from its support technicians in order to deceive customers into thinking that their concerns and complaints were being taken seriously and that solutions might be found for the problems they were experiencing with their inverters.

39. At one point in time, the problems with the inverters were so numerous and so pervasive that Defendant Advanced Energy's senior management considered implementing a buy-back program. That program never came to be, however, and customers, such as Relator Solar Liberty, were left to struggle with inverters that were defective and hazardous.

40. In or around the time that the widespread problems associated with its inverters became apparent, Advanced Energy decided to end its solar energy operations. As a result of this decision, Advanced Energy soon lost its ability to offer any replacement stock for inverters that were to be returned as defective.

41. While the process of sending replacement stock to customers had been highly problematic because the replacement parts inevitably suffered from the same problems and defects that afflicted the original parts, the process of responding to customers' complaints, including those of Relator Solar Liberty, became even more complicated and dangerous when there was no replacement stock for Advanced Energy to utilize.

42. This is because, once the replacement stock was exhausted, Advanced Energy began to instruct customers with complaints regarding the inverters, including Relator Solar Liberty, to remove a problematic inverter from the system in which it had been installed and return it to Advanced Energy for refurbishing. This process often left customers, including Relator Solar Liberty, with an exposed, live DC conductor in the field, which created major safety issues and concerns for Defendant Advanced Energy's customers, including Relator Solar Liberty.

43. Moreover, and on information and belief, Advanced Energy engaged in a pattern and practice whereby it would represent to customers, including Relator Solar Liberty, that Defendant Advanced Energy would repair or refurbish faulty or defective inverters that were returned to it by customers when, in point of fact, Defendant Advanced Energy would make no meaningful effort to repair or refurbish such inverters and would instead simply return the faulty or defective inverters to customers after a period of time had passed.

44. This intentionally deceptive charade damaged customers of Advanced Energy, including Relator Solar Liberty, who were forced to provide labor to service and disconnect the defective inverters, ship them to Advanced Energy, and reinstall the same inverters after they were returned without any credible or practical effort by Advanced Energy to service the inverters.

45. The cost incurred by Relator Solar Liberty for each service call in New York City was significant. Every time that Defendant Advanced Energy asked Relator Solar Liberty to send an inverter to the Advanced Energy headquarters for a purported service call, it did so on a false pretense of servicing the inverter. Every time Relator Solar Liberty was victimized by this fraudulent scheme, it paid a qualified electrician at prevailing wage rates for the City of New York to uninstall the defective inverter and reinstall a defective, un-refurbished inverter. The cumulative costs to Relator Solar Liberty arising from the services undertaken at the behest of Defendant Advanced Energy's false pretenses imposed an extreme financial burden on Relator Solar Liberty, which was relying on the good faith and fair dealing of its equipment supplier, Defendant Advanced Energy.

-10-

46. In or around February 2018, one of Defendant Advanced Energy's testing agencies (Intertek) advised Advanced Energy that certain of the three-phase inverter/combiner boxes that were incorporated into Advanced Energy's inverters – including, on information and belief, inverters that had been sold to Relator Solar Liberty – posed a fire hazard and could result in the inverter's front cover being forcibly expelled from the element. Advanced Energy never advised Relator Solar Liberty of the safety concerns associated with the parts that Intertek had tested and found to be defective.

47. In light of the allegations set forth above, Advanced Energy has failed and refused to adequately address the material defects associated with its inverters despite numerous requests from Relator Solar Liberty.

48. Based upon the long-running and widespread failures associated with the inverters, Advanced Energy knew or reasonably should have known the inverters it sold to Relator Solar Liberty suffered from multiple material defects. Despite this, Advanced Energy represented that the inverters were merchantable and of good quality and sold these defective products with knowledge of their material defects.

49. Notwithstanding its knowledge that the inverters it was selling to Relator Solar Liberty were defective, Defendant Advanced Energy sold approximately 120 inverters to Relator Solar Liberty and accepted payment from Relator Solar Liberty for the same.

50. Notwithstanding its knowledge that the inverters it was selling to Relator Solar Liberty were defective, Defendant Advanced Energy continued to offer purported service and support for those inverters. In so doing, Defendant Advanced Energy acted

-11-

in bad faith and with the intent to deceive Relator Solar Liberty regarding the nature and extent of the defects associated with the inverters.

51. Relator Solar Liberty was acting as a contractor of the New York Power Authority in purchasing the aforesaid inverters and used funds received from the New York Power Authority in order to purchase those inverters from Defendant Advanced Energy.

52. In total, the New York City Schools Solar Project gave rise to payments to Advanced Energy of approximately $315,250.00 for the inverters themselves as well as the expenditure of significant amounts of NYPA funds associated with the installation of those inverters. Moreover, the costs associated with replacing Advanced Energy's defective and dangerous inverters will be well over one million dollars – the replacement inverters themselves will cost approximately $582,490.00 and the work to install them will total approximately $645,000.00.

## AS AND FOR A FIRST CAUSE OF ACTION

53. Plaintiff New York Power Authority, by and through *qui tam* Relator, Solar Liberty Energy Systems, Inc., repeats and re-alleges paragraphs 1 through 52 as though set forth more fully herein.

54. By entering into the agreements referenced above to supply Relator Solar Liberty with the aforesaid inverters, knowingly supplying Relator Solar Liberty with inverters that Advanced Energy knew were defective, faulty, and dangerous, then demanding and accepting payment for the same, and then continuing to deceive Relator Solar Liberty in connection with the purported servicing of the inverters,

-12-

Defendant Advanced Energy violated the New York False Claims Act, including without limitation Section 189 thereof, by knowingly presenting, or causing to be presented, false or fraudulent claims for payment or approval to a contractor in the possession of money that was paid, or was to be paid as a reimbursement, to that contractor by a state government entity and which money was to be spent or used on a state government entity's behalf and/or to advance a program or interest of such state government entity.

55. Defendant Advanced Energy's wrongful conduct has caused losses to Plaintiff New York Power Authority and Relator Solar Liberty in the form of all losses associated with and arising from Defendant Advanced Energy's defective, unserviceable, and dangerous inverters.

56. As a result of Defendant Advanced Energy's wrongful conduct, Plaintiff New York Power Authority and Relator Solar Liberty suffered damages and therefore are first entitled to civil penalties of not less than six thousand dollars and not more than twelve thousand dollars for each such defective part sold, plus three times the amount of all damages, including consequential damages, which the state government entity sustains as a result of Defendant's wrongful conduct.

57. As a result of Advanced Energy's wrongful conduct, Relator Solar Liberty has suffered special damages in the form of, among other things, significant harm to its goodwill, business reputation, community reputation, and the reputation of the goods and services that it provides to its customers and to the public generally.

**WHEREFORE**, Plaintiff Power Authority of the State of New York *ex rel.* Solar Liberty Energy Systems, Inc. asks that judgment be entered in its favor and against the Defendant as follows:

1. An award in the amount of three times the amount of all damages suffered by the Plaintiff and/or the Relator, including Relator's special damages, including applicable interest thereon, plus civil penalties of $12,000.00 for each false claim, record, or statement presented or made by the Defendant;

2. An award to the Relator Solar Liberty of a portion of any proceeds that the Plaintiff Power Authority of the State of New York may recover on its own behalf in a settlement or disposition of this action;

3. An award of reasonable expenses that the Plaintiff and/or Relator will necessarily incur in prosecuting this matter, including reasonable attorneys' fees and costs; and

4. Such other and further relief as the Court may deem just and proper.

Dated: Buffalo, New York
October 23, 2018

BOND, SCHOENECK & KING, PLLC

By: *[signature]*
Heath J. Szymczak, Esq.
Dennis K. Schaeffer, Esq.
Alyssa J. Jones, Esq.
*Attorneys for Plaintiff*
Avant Building - Suite 900
200 Delaware Avenue
Buffalo, New York 14202-2107
(716) 416-7000
hszymczak@bsk.com
dschaeffer@bsk.com
ajones@bsk.com

1315061