UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THE POWER AUTHORITY OF THE STATE
OF NEW YORK, *ex rel*. SOLAR LIBERTY
ENERGY SYSTEMS, INC.,

                        Plaintiff,

v.

ADVANCED ENERGY INDUSTRIES, INC.,

                        Defendant.

_____

**DECISION AND ORDER**

Case No. 1:19-cv-1542-LJV-JJM

       District Judge Lawrence J. Vilardo referred this matter to me for supervision of

pretrial proceedings. [47].  Before me is defendant Advanced Energy Industries, Inc.'s motion

[199][1] to seal four exhibits (or portions of them) that were attached to plaintiff Solar Liberty

Energy Systems, Inc.'s opposition to Advanced Energy's motion for sanctions [160], and

portions of Solar Liberty's Memorandum of Law [172-49] that referred to one of those exhibits.

## BACKGROUND

       This is a *qui tam* action in which Solar Liberty seeks recovery on behalf of the

Power Authority of the State of New York ("NYPA") against Advanced Energy for selling to

Solar Liberty allegedly defective solar inverters, which Solar Liberty then installed at New York

City schools pursuant to contracts with the NYPA.  In June of 2024, Advanced Energy filed a

motion for sanctions against Solar Liberty related to its dealings with a witness who was

formerly Advanced Energy's employee.  *See* [160].  I recommended that the motion be denied

_____

[1]     Bracketed references are to CM/ECF docket entries, and page references ae to CM/ECF
pagination.

[178].  Judge Vilardo agreed.  His Decision and Order adopted my Report and Recommendation and denied Advanced Energy's motion for sanctions [187].

**<u>Advanced Energy's Motion to Seal</u>**

Thereafter, Advanced Energy filed this motion to seal documents, or portions thereof, that Solar Liberty attached to the Declaration of Heath Szymczak in opposition to the motion for sanctions:

- Exhibit 20 ([172-20, 199-9]) in its entirety;

- Portions of Exhibit 1 that refer to Exhibit 20 ([172-1, 199-10]);

- Portions of Exhibit 35 ([172-35, 199-7]);

- Portions of Exhibit 39 ([172-39, 199-8]); and

- Portions of Solar Liberty's Memorandum of Law that refer to Exhibit 20 ([172-49, 199-11]).

Exhibit 20 is an internal Advanced Energy report concerning the 3TL product at issue in this litigation (the "report").  Declaration of Brian Lee [199-5], ¶4.  Advanced Energy proposes to seal all 14 pages of the report:

> "This exhibit contains design information and engineering analysis on the 3TL, and proposed engineering changes to the 3TL.  While Advanced Energy is no longer in the solar market, it continues to service 3TLs and obtain revenue from doing so.  If this information is disclosed, competitor companies that also service the 3TLs could have an unfair advantage through obtaining this internal 3TL data.  Moreover, the presentation evidences troubleshooting processes and theory that Advanced Energy used with the 3TL and may still use with its current product offerings.  This information could provide competitor companies with unfair insight into Advanced Energy processes, possibly allowing them to unfairly improve their own and to more effectively compete with Advanced Energy."

Id., ¶4.  Exhibit 1 is the deposition transcript of witness Norman Smith, a former Advanced Energy employee.  Advanced Energy proposes redactions to the portions of Mr. Smith's

testimony that refer to the report.  [199-5], ¶3.  Advanced Energy also proposes redacting the portions of Solar Liberty's Memorandum of Law that refer to Exhibit 20.  Id.

Exhibit 35 is an internal Advanced Energy document entitled "Week 4 Revenue Outlook February 2, 2015".  Advanced Energy proposes to redact names of "current Advanced Energy customers", "customer order information", and actions that Advanced Energy was taking to "address issues with non-3TL products".  Id., ¶5.  It argues that making public a "list of current customers and volume of past sales to those customers could give competitors of Advanced Energy an advantage in soliciting business away from Advanced Energy".  Id.  For some of those customers, "non-disclosure agreements . . . may also require protection" of that information.  Id.

Exhibit 39 is a "February 13, 2015 email containing meeting notes from that week's internal CEO staff meeting".  Id., ¶6.  Advanced Energy proposes to redact portions of the email that are not related to the 3TL, including: information on Advanced Energy's customers; internal reports from its finance, operations, materials and sales, and human resources departments; and information concerning products that it currently offers for sale.  Id.  It argues that competitors armed with such information could "interfere with [its] current customer relationships and also obtain unfair insight into how Advanced Energy operates, including how it reviews and discusses corporate information".  Id.

Advanced Energy argues that these documents are not judicial documents in which the public has a presumption of public access, because they were not relevant to the motion for sanctions and were not relied upon by the court in either the Report and Recommendation or the Decision and Order.  [199-6] at 6-7.  It further argues that even if the

documents were judicial documents, the presumption of public access is outweighed by its

interest in protecting its confidential business information.  Id. at 7-11.

## DISCUSSION

Motions to seal are subject to a three-part inquiry.  First, the "court must conclude

that the documents at issue are . . . judicial documents".  Savage v. Sutherland Global Services,

Inc., 747 F.Supp.3d 578, 584-85 (W.D.N.Y. 2024).  If they are, the court must next "determine

the weight of that presumption [of access]".  Id. at 585.  Finally, the court must "balance

competing considerations against" the presumption of access, such as "the danger of impairing

law enforcement or judicial efficiency and the privacy interest of those resisting disclosure".  Id.

### 1.  The documents are "judicial documents"

"The mere filing of a paper or document with the court is insufficient to render

that paper a judicial document subject to the right of public access . . . In order to be designated a

judicial document, the item filed must be relevant to the performance of the judicial function and

useful in the judicial process".  Trump v. Deutsche Bank AG, 940 F.3d 146, 150-51 (2d Cir.

2019).

Advanced Energy argues that the documents it seeks to seal are not judicial

documents because neither Judge Vilardo or I cited them in our respective Report and

Recommendation or Decision & Order.  See [199-6] at 7.  First, as these materials were part of

the record on that motion, absent an affirmative statement by either myself or Judge Vilardo that

we did not consider those exhibits, Advanced Energy has no basis to presume that the lack of a

citation to those specific exhibits demonstrates that they were not relied upon by the court.

Neither I, nor Judge Vilardo, made any such statement.  Compare Moshell v. Sasol Limited,

2021 WL 3163600, *1 (S.D.N.Y. 2021) (granting a motion to seal exhibits where "[t]he Court did not rely on them in resolving Defendants' Motion for Reconsideration and Sanctions").

Moreover, "reliance is not the test.  The proper inquiry is whether the documents are relevant to the performance of the judicial function, not whether they were relied upon".  Id. at 152.  Further, judicial functions are broader than conducting trials and deciding motions, and includes the court's role in supervising discovery and the conduct of litigants and attorneys.  "[A] court performs the judicial function not only when it rules on motions currently before it, but also when properly exercising its inherent supervisory powers".  Brown v. Maxwell, 929 F.3d 41, 49 (2d Cir. 2019) (internal quotations and alterations omitted).

I find that the documents at issue here, which were filed in connection with Advanced Energy's motion for sanctions, are judicial documents.

## 2.  Weight of the presumption of public access

I next must determine the weight of the presumption of access.  Savage, supra.  The purpose of the submission of material to the court affects the weight of the presumption.  For example, "evidence introduced at trial or in connection with summary judgment enjoys a strong presumption of public access".  Id.; see also Lugosch v. Pyramid Company of Onondaga, 435 F.3d 110, 121 (2d Cir. 2006) ("where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches").  However, not all documents submitted to the court have a strong presumption of public access:

> "Although a court's authority to oversee discovery and control the evidence introduced at trial surely constitutes an exercise of judicial power, we note that this authority is ancillary to the court's core role in adjudicating a case.  Accordingly, the presumption of public access in filings submitted in connection with discovery disputes or motions in limine is generally somewhat lower than the presumption applied to material introduced at trial, or in

> connection with dispositive motions such as motions for dismissal
> or summary judgment.  Thus, while a court must still articulate
> specific and substantial reasons for sealing such material, the
> reasons usually need not be as compelling as those required to seal
> summary judgment filings."

Brown, 929 F.3d at 50.

Here, the motion under consideration was for sanctions related to Solar Liberty's conduct with a witness.  *See* Report and Recommendation [178] at 1-2.  Unlike a motion for summary judgment, this type of a motion falls under the supervisory function of the court and is "ancillary to the court's core role in adjudicating a case".  Brown, 929 F.3d at 50; *see also* id. at 51-52 (describing imposition of sanctions as one of the methods the district court may use to fulfill its supervisory responsibilities).

Solar Liberty argues that the presumption here, with respect to Exhibit 20, is strong because the information in that exhibit concerns the very inverters at issue in this case. [200] at 10-11 (*citing In re* Keurig, Brown, and Lugosch).  However, the courts' focus in *In re* Keurig, Brown, and Lugosch at the stage of the analysis determining the weight of the presumption was not the relevance of the content of the materials to the issues in those particular cases, but the relationship of the pleading, motion, or other submission at issue to the court's core judicial role.

While Solar Liberty may be correct that the presumption of public access to this document would be very strong if it were attached to a motion for summary judgment, that is not the case here.  [200] at10-11.  Exhibit 20 was attached to a motion for sanctions related to its conduct during discovery.  While this analysis could change if Exhibit 20 is attached to some future motion for summary judgment or a Daubert motion, the presumption of access to the documents at issue here, and under these circumstances, has only "modest" weight. *In re* Keurig

Green Mountain Single-Serve Coffee Antitrust Litigation, 2023 WL 196134, *3 (S.D.N.Y. 2023) (*citing* Brown, supra).

### 3. Balancing competing considerations

The final step is balancing the competing considerations raised by the parties in support of sealing against the presumption of access. Savage, supra. Advanced Energy argues that "any presumption of public access is outweighed by the need to protect Advanced Energy's confidential business information." [199-6] at 7. I agree that "courts may deny access to records that are sources of business information that might harm a litigant's competitive standing". *In re* Parmalat Securities Litigation, 258 F.R.D. 236, 244 (S.D.N.Y. 2009). Courts within this circuit "have permitted the redaction of confidential information such as sales and pricing data on the grounds that its disclosure would work a competitive harm on the disclosing enterprise". *In re* Keurig, 2023 WL 196134 at *3.

"The party seeking protection from disclosure has the burden of making a particular and specific demonstration of fact, as distinguished from general, conclusory statements, revealing some injustice, prejudice, or consequential harm that will result if protection is denied." Blum v. Schlegel, 150 F.R.D. 38, 41 (W.D.N.Y. 1993); *see also* Coventry Capital US LLC v. EEA Life Settlements, Inc., 2017 WL 5125544, *3 (S.D.N.Y. 2017). A party must "concretely and specifically" describe the asserted harm. *In re* Keurig, 2023 WL 196134 at *4. "Broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test". Id. Further, "the older the information is, the less appropriate it is to seal that information, particularly when the party does not explain with specificity why, despite the passage of time, the information should still be sealed". Id.

To support its motion to seal, Advanced Energy submitted the Declaration of Brian Lee, its Director of Engineering, and former Engineering Manager in the solar division. [199-5], ¶¶1-2. I address below the documents at issue.

### a. Exhibit 20, Exhibit 1, and the Memorandum of Law

I begin with Exhibit 20, as disposition of this request also affects Advanced Energy's request to seal portions of Exhibit 1 and Solar Liberty's Memorandum of Law. Lee states with respect to Exhibit 20:

> "This exhibit contains design information and engineering analysis on the 3TL, and proposed engineering changes to the 3TL. While Advanced Energy is no longer in the solar market, it continues to service 3TLs and obtain revenue from doing so. If this information is disclosed, competitor companies that also service the 3TLs could have an unfair advantage through obtaining this internal 3TL data. Moreover, the presentation evidences troubleshooting processes and theory that Advanced Energy used with the 3TL and may still use with its current product offerings. This information could provide competitor companies with unfair insight into Advanced Energy processes, possibly allowing them to unfairly improve their own and to more effectively compete with Advanced Energy."

[199-5], ¶4.

In opposition, Solar Liberty argues that Advanced Energy has failed to make the detailed showing necessary to justify the sealing of the information in Exhibit 20, which is now eleven years old. [200] at 13. This is especially so here, it argues, where Advanced Energy has stated that it is no longer in the solar market. Id.; *see also* [199-5], ¶ 4 ("Advanced Energy is no longer in the solar market"). Solar Liberty argues further that Lee's averments of the prejudice Advanced Energy would face if its competitors in the service industry were able to access this data is "vague and devoid of specificity". [199-5] at 14.

In its reply, Advanced Energy does not describe with any greater specificity the potential harm it faces should Exhibit 20 be unsealed.  Instead, it states that its "statements of harm from any public disclosure of Exhibit 20 are sufficient" "[g]iven the low presumption of public access".  [201] at 7.  A party must "concretely and specifically" describe the asserted harm.  In re Keurig, 2023 WL 196134 at *4.  "Broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test".  Id.

Lee's statements concerning the potential commercial harm that could result from disclosure of Exhibit 20 are vague, and the reasons he identifies for sealing Exhibit 20 lack specificity – especially for information that is eleven years old.  "[T]he older the information is, the less appropriate it is to seal that information, particularly when the party does not explain with specificity why, despite the passage of time, the information should still be sealed".  Id.

For example, Lee states that Exhibit 20 "contains design information and engineering analysis on the 3TL, and proposed engineering changes to the 3TL".  [199-5], ¶4.  However, Advanced Energy is "no longer in the solar market", and its only current involvement with the 3TL product is to "obtain revenue" from servicing 3TLs.  Id.  Lee asserts that competitors "that also service the 3TLs **could** have an unfair advantage through obtaining this internal 3TL data".  Id. (emphasis added).  However, he does not assert that this information is only known by Advanced Energy, or that the design and engineering information for the 3TL is not widely known outside of Advanced Energy.  Moreover, his acknowledgment that other companies service the 3TL suggests that other companies know and understand how the 3TL was designed and engineered, how it fails, and how to repair it.

Lee is no more specific identifying the harm that might befall Advanced Energy if information in Exhibit 20 that "**evidences** troubleshooting processes and theory that Advanced

Energy used with the 3TL and **may** still use with its current offerings" is made public.  Id.
(emphasis added).  He states that "[t]his information **could** provide competitor companies with
unfair insight into Advanced Energy processes, **possibly** allowing them to unfairly improve their
own and to more effectively compete with Advanced Energy".  Id. (emphasis added).  He does
not say that Exhibit 20 actually identifies Advanced Energy's troubleshooting processes and
theory, that the troubleshooting processes and theories evidenced by Exhibit 20 are unique to
Advanced Energy, or that they are not widely used in the industry.  Lee does not even state
unequivocally that Advanced Energy still uses those techniques – instead, he states that
Advanced Energy "**may** still use [them] with its current product offerings".  Id. (emphasis
added).

          Although the strength of the public presumption of disclosure here is modest, the
information that Advanced Energy seeks to shield from public view here is over a decade old.
Advanced Energy has failed to satisfy its burden to state with any specificity how disclosure of
the information in Exhibit 20 would be harmful to its business or to otherwise give competitors
an unfair advantage vis-à-vis Advanced Energy in the limited, servicing role that Advanced
Energy continues to perform with respect to the 3TL product.

          Accordingly, Advanced Energy's motion to seal is denied with respect to Exhibit
20, and the portions of Exhibit 1 and Solar Liberty's Memorandum of Law in opposition to the
motion for sanctions that refer to Exhibit 20.

      **b.  Exhibits 35 and 39**

          In contrast to Advanced Energy's request to seal Exhibit 20, its request to seal
portions of Exhibits 35 and 39 are narrowly tailored and supported by specific statements

concerning the reasons for sealing. Solar Liberty does not oppose Advanced Energy's request to redact these exhibits. [200] at 5.

Exhibit 35 is a "Revenue Outlook" for Advanced Energy dated February 2, 2015. Lee states that, notwithstanding that the presentation was marked confidential and not shared outside of Advanced Energy, it "only seeks to permanently seal portions of this exhibit . . . that contain information on current Advanced Energy customers" that are not parties to this litigation. [199-5], ¶5. He explains that the proposed redacts concern "customer order information" and "Advanced Energy actions to address issues with non-3TL products". Id. He states that "knowing the list of current customers and volume of past sales to those customers could give competitors of Advanced Energy an advantage in soliciting business away from Advanced Energy". Id.

Unlike his statements with respect to Exhibit 20, Lee's explanation provides a reason why the information in Exhibit 35, notwithstanding its age, should be redacted. The exhibit refers to specific non-party customers. The customers are current customers of Advanced Energy. Further, Lee's concern about this information being public is specific: a competitor's knowledge of Advanced Energy's customers, and which products – and the volume of those products – the customers purchased, would give competitors an advantage in their efforts to solicit business away from Advanced Energy.

Exhibit 39 is a February 13, 2015 email "containing meeting notes from that week's internal CEO staff meeting". Although Advanced Energy considers the entire email to be confidential, it is seeking to seal only the portions of the email "that do *not* pertain to the 3TL". [199-5], ¶6. Lee also specifically identifies why this information should be sealed, notwithstanding its age:

"The non-3TL portion of the email include information on Advanced Energy's current customers (including two of Advanced Energy's largest current customers) and then-current customers, as well as internal reporting from Advanced Energy's corporate functional groups, including Finance, Operations, Materials and Sales, and HR. These meeting notes also contain information on Advanced Energy's Precision Power Products . . . which remain part of Advanced Energy's current product offerings. Notes from management-level meetings are not shared by Advanced Energy outside the company, as competitors could use it to interfere with Advanced Energy's current customer relationships and also obtain unfair insight into how Advanced Energy operations, including how it reviews and discusses corporate information".

[199-5], ¶6.

Unlike his statements with respect to Exhibit 20, Lee's explanation provides a reason why the information in Exhibit 39, notwithstanding its age, should be redacted. The exhibit refers to specific non-party customers. The customers are current customers of Advanced Energy – including two of its largest. The email also contains information on products it still offers for sale. Further, Lee's concern about this information being public is specific: a competitor's knowledge of Advanced Energy's customers and current products would give competitors the ability to interfere with Advanced Energy's current customer relationships.

The requested redactions target only information not relevant to this suit, and Advanced Energy has stated plausibly, and with specificity, the potential harm that could result from that information being made public. I find that it has met its burden to specifically identify and articulate the "injustice, prejudice, or consequential harm that will result if protection is denied." Blum, 150 F.R.D. at 41. Its motion is granted with respect to Exhibits 35 and 39.

**CONCLUSION**

For these reasons, Advanced Energy's motion [199] is granted in part and denied in part. Absent further order, Exhibit 20 [172-20, 199-9], Exhibit 1 [172-1, 199-10], and Solar

Liberty's Memorandum of Law [172-49, 199-11] shall be unsealed on February 25,

2026.  Advanced Energy's motion with respect to Exhibits 35 [172-35, 199-7] and 39 [172-39,

199-8] is granted, and they are sealed in part in accordance with the redactions that Advanced

Energy proposed.

Dated: February 4, 2026

    /s/   Jeremiah J. McCarthy
        JEREMIAH J. MCCARTHY
        United States Magistrate Judge