UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THE POWER AUTHORITY OF THE STATE
OF NEW YORK, *ex rel*. SOLAR LIBERTY
ENERGY SYSTEMS, INC.,

                Plaintiff,

v.

ADVANCED ENERGY INDUSTRIES, INC.,

                Defendant.

**DECISION AND ORDER**

1:19-cv-1542-LJV-JJM

---

        Before the court are motions for preclusion of expert reports by defendant

Advanced Energy Industries, Inc. [242][1] and plaintiff/relator Solar Liberty Energy Systems, Inc.

[243], which have been referred to me by District Judge Lawrence J. Vilardo. [47]. The motions

are non-dispositive. Shariff v. Goord, 2026 WL 1529289, *3 (W.D.N.Y. 2026). Having

considered the parties' submissions [242-245, 247, 248] and heard oral argument on July 1, 2026

[249], Advanced Energy's motion is granted in part, and Solar Liberty's motion is denied.

## BACKGROUND

        Solar Liberty alleges two causes of action against Advanced Energy: first, on

behalf of itself and the Power Authority of the State of New York for violation of the New York

False Claims Act (State Finance Law §187 *et seq.*); and second, on behalf of itself for common

law fraudulent inducement. Second Amended Complaint [30]. Its claims arise from Advanced

---

[1]     Bracketed references are to CM/ECF docket entries, and page references ae to CM/ECF pagination.

Energy's sale to Solar Liberty of allegedly defective "solar inverters", which Solar Liberty installed at various public schools in New York City (id., ¶¶8-15).

Specifically, the Second Amended Complaint alleges that:

- "[s]oon after installation, Defendant Advanced Energy's inverters began to experience widespread and persistent failures, which . . . resulted in loss of power generation and significant and ongoing repair costs" ([30], ¶16);

- "the widespread and persistent defects associated with Defendant Advanced Energy's inverters were well-known to, and actively concealed by, Defendant Advanced Energy for a significant period of time prior to Relator Solar Liberty's purchase of the same" (id., ¶17);

- "Advanced Energy knowingly misrepresented to customers, including to Relator Solar Liberty, that these inverters 'have a great reliability track record' and were 'highly reliable'" (id., ¶18);

- "Advanced Energy's inverters suffered from excessively high failure rates due to design flaws and/or manufacturing defects of which Advanced Energy was aware" (id., ¶19);

- "Advanced Energy was at all times aware that the excessively high failure rate of its inverters was due to various defects associated with the inverters" (id., ¶21);

- "Advanced Energy actively concealed its knowledge of the defects associated with its inverters when it sold them to Relator Solar Liberty" (id., ¶22);

- "Advanced Energy provided customers, but not Relator Solar Liberty, with free 'restraint kits' by which to effect the field 'upgrade' of inverters already installed so as to prevent the covers from blowing off. These restraint kits were inadequate to resolve the hazards associated with the inverters and . . .  did nothing to resolve the undisclosed and latent defects

that were causing approximately half of all Advanced Energy inverters to fail in the first place" (id., ¶32); and that

- "Advanced Energy even went so far as to create an 'Upgrade FAQ' . . . intended to cover up the existence and extent of the problem. Notably, this FAQ . . . reveals the extent to which Defendant Advanced Energy was aware of the inherent defects of the inverters and the lengths to which it would go to evade acknowledging them" (id., ¶33).

In support of its first cause of action, Solar Liberty alleges that Advanced Energy "knowingly suppl[ied] Relator Solar Liberty with inverters that Advanced Energy knew were defective, faulty, and dangerous, then demand[ed] and accept[ed] payment for the same" (id., ¶58), and that "[a]s a result of . . . Advanced Energy's wrongful conduct, Plaintiff New York Power Authority and Relator Solar Liberty suffered damages" (id., ¶60).

In support of its second cause of action, Solar Liberty alleges that "Advanced Energy's misrepresentations and omissions of material facts as to the (1) reliability, (2) safety, and (3) suitability of the solar inverters . . . were false, known by Advanced Energy to be false, and made for the purpose of inducing Solar Liberty to rely thereon and purchase [the] inverters" (id., ¶63), that "Solar Liberty reasonably relied on those representations . . . and would not have contracted to purchase them but for those representations and omissions" (id., ¶64), and that "[a]s a result of Defendant Advanced Energy's fraudulent inducement of Solar Liberty into purchasing the solar inverters, Solar Liberty has suffered damages in the form of, among other things, the original cost of the inverters, the cost of originally installing them, the cost of replacing the inverters, and significant harm to its goodwill [and] business reputation" (id., ¶65).

In its Answer to the Second Amended Complaint, Advanced Energy denies any wrongdoing and asserts several defenses, including that Solar Liberty's "damages, if any, were

-3-

caused by its own actions and/or omissions" ([35], ¶70), and that it "failed to mitigate its damages, if any" (id., ¶71). However, it cautions that "by setting forth the[se] defenses . . . [it] does not intend to concede or imply that such defenses are affirmative defenses for which it bears the burden of proof" (id. at 9).

Pretrial discovery commenced in September 2021 with the entry of my initial Case Management Order ("CMO") [69], which has since been repeatedly amended. My Sixth Amended CMO provided that "[e]ach party intending to offer the testimony of an expert in connection with any issue as to which it bears the burden of proof (including . . . affirmative defenses) shall identify such expert(s) and provide reports pursuant to Rule 26 by no later than July 28, 2025" ([197], ¶1). On that date, Solar Liberty served three expert reports (Ryan Blais, Scott Andries, and a joint report of Samuel Sharpless and Keith Mullins). *See* Dutta Decl. [242-1], ¶2. Advanced Energy did not serve any reports at this time, claiming that "it does not bear the burden of proof on any element of the two claims Solar Liberty brought in this litigation and does not intend to offer expert testimony in support of any affirmative defense". Advanced Energy's Memorandum of Law [242-12] at 9.

My Tenth Amended CMO required "[e]ach party intending to offer other expert testimony (*i.e.,* testimony in response to expert testimony previously designated by an opposing party, or in support of an issue as to which the offering party does not bear the burden of proof) [to] identify such expert(s) and provide reports pursuant to Rule 26 by no later than April 10, 2026" ([231], ¶2). On that date, Solar Liberty served expert reports by Michael Kocsmiersky [242-4] and Steven Hall [242-5], and Advanced Energy served expert reports by Mohammed Agamy [243-7] and Kelly Besaw [243-8], all of which are the subject of the pending motions.

**DISCUSSION**

Advanced Energy moves to preclude the Kocsmiersky and Hall reports as untimely, arguing that they "could not be offered in response to previously designated expert testimony by Advanced Energy because Advanced Energy did not designate any expert testimony until April 10, 2026", and that they "cannot fit into the only other category permitted on the Rebuttal Expert Deadline: testimony in support of an issue on which Solar Liberty does *not* bear the burden of proof" because "Solar Liberty bears the burden of proof on all elements of its two asserted claims, and the Kocsmiersky and Hall Reports squarely address those elements". Advanced Energy's Memorandum of Law [242-12] at 15.

Solar Liberty responds that the Kocsemiersky and Hall reports concern issues for which it does not bear the burden of proof. [244] at 5. Solar Liberty states its intent to use the Kocsemiersky report "to rebut any affirmative claims by [Advanced Energy] that its damages were caused by its own culpable conduct". Id. at 8. It likewise intends the use the Hall report "to rebut any affirmative claim by [Advanced Energy] that Solar Liberty should have installed the Cover Retention Kit after receiving the 'Product Advisory' and failed to do so". Id. In fact, Solar Liberty contends that Advanced Energy's expert disclosures are the untimely ones, as they address issues of comparative fault, alternative causation, and failure to mitigate damages, which it argues are affirmative defenses for which Advanced Energy bears the burden of proof.

**A.     The Hall Report**

The Hall report analyzes "the safety communications process between [Advanced Energy] and its customers related to [Advanced Energy's] inverters". [242-5] at 3. Hall focuses on an April 2015 "Product Advisory" issued by Advanced Energy which recommended installation of an upgrade kit, and an accompanying document entitled "2015 3TL Upgrade

FAQ", and opines that the Product Advisory "did not describe elements of hazard and risk that are typical of safety communications", that Advanced Energy "misrepresented the difficulty of following the Product Advisory", and that the Product Advisory and Upgrade FAQ "reflected a plan to avoid answering reasonable and anticipated safety questions, and to conceal the safety-related nature of the issues being addressed". Id. at 5.

I question whether I even need to decide whether the Hall report was timely, since the parties appear to agree that the opinions contained in that report will not even be at issue in this case. Solar Liberty states that it "does not intend to offer the opinions of Mr. Hall as part of its case-in-chief". Solar Liberty's Memorandum of Law [244] at 17; Solar Liberty's April 15, 2026 letter [234] at 1 ("[n]either installation of the inverters nor the 'Product Advisory' are part of Solar Liberty's case-in-chief"). During oral argument on April 17, 2026 [235], counsel for Advanced Energy stated that "Solar Liberty's responsive [April 15, 2026] letter argument is that the product advisory and any cover detachment issues will not be part of its case in chief . . . . If Solar Liberty doesn't intend to raise the cover issue . . . we don't intend to raise it either". Transcript of April 17, 2026 proceedings [242-10] at 6-7.

In any event, the Hall report deals with specific factual matters that Solar Liberty alleged in its Second Amended Complaint [30]. "In general, the law places the burden of proof on the party that asserts a contention and seeks to benefit from it." Martinelli v. Bridgeport Roman Catholic Diocesan Corporation, 196 F.3d 409, 428 (2d Cir. 1999); Chepilko v. Henry, 722 F. Supp. 3d 329, 343 (S.D.N.Y. 2024) ("[p]laintiff bears the burden of proof to present evidence in support of the allegations set forth in his Complaint"). Therefore, Solar Energy bears the burden of proof on each of the allegations of the Second Amended Complaint.

That pleading attaches the Product Advisory as Exhibit C ([30-1] at 9-11) and the Upgrade FAQ as Exhibit D (id. at 12-23). It alleges that the "restraint kits [described in the Product Advisory] were inadequate to resolve the hazards associated with the inverters and, of course, did nothing to resolve the undisclosed and latent defects that were causing approximately half of all Advanced Energy inverters to fail in the first place" ([30], ¶32), and that the Upgrade FAQ was "intended to cover up the existence and extent of the problem. Notably, this FAQ . . . reveals the extent to which Defendant Advanced Energy was aware of the inherent defects of the inverters and the lengths to which it would go to evade acknowledging them" (id., ¶33).

Since Solar Liberty bears the burden of proof as to the matters addressed in the Hall report, that Report is untimely. "Rule 37(c)(1) states that '[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard . . . may' impose a lesser sanction. However, 'may' does not mean 'must' . . . . [A]lthough sanctions can vary depending on the circumstances, the baseline rule is that the required sanction in the ordinary case is mandatory preclusion." Daniels v. Daemen University, 807 F. Supp. 3d 197, 203 (W.D.N.Y. 2025).

For the reasons discussed in Advanced Energy's Memorandum of Law ([242-12] at 21 *et seq.*), Solar Liberty's belated disclosure of the Hall reports was neither substantially justified nor harmless. Since we are now on the *Tenth* Amended CMO, I see no reason to depart from the "baseline rule" of mandatory preclusion.

**B.**      **The Kocsmiersky and Agamy Reports**

Dr. Agamy's report indicates that he was "retained by Advanced Energy to provide rebuttal analysis to [Solar Liberty's] Sharpless/Mullins Report". [243-7] at 4. He offered a litany of opinions, including that: the AE 3TL inverters installed at the school locations were sufficiently designed, were suitable for this use, and their voltage ratings were sufficient; and that Solar Liberty's installation practice, site conditions, and maintenance deficiencies "materially contributed" to the issues with the inverters. Id. at 5-7.

For his part, Kocsmiersky opines that Advanced Energy's inverters "were installed in a professional manner commensurate with top quality workmanship", that "there were a high number of failures" of the inverters", and that "[t]he failures are of a nature that is a feature of the inverter and not the installation of which they are a part". [243-6] at 4.

Advanced Energy argues that Solar Liberty bears the burden of ruling out defective installation of the inverters as an intervening or superseding cause of its damages. Advanced Energy's Memorandum of Law [242-12] at 17-19. Solar Liberty responds that "[w]]hile [it] does bear the burden to prove that [Advanced Energy's] misrepresentations were a substantial factor in its damages, it does not have to affirmatively disprove installation errors to meet its burden on causation". Solar Liberty's Memorandum of Law [244] at 9; Solar Liberty's April 15, 2026 letter [234] at 1 ("[i]nstallation is not part of Solar Liberty's case-in-chief. It arises solely in connection with Advanced Energy's affirmative defenses").

Having reviewed the parties' submissions, I recognize that the dividing line between causation and comparative fault can be elusive. *See* 5 Wright & Miller, Federal Practice and Procedure §1271 (4th ed.) ("when the plaintiff alleges that the defendant was negligent, there basically are two paths that can be followed. Either the allegation of the defendant's negligence

can be treated as also raising the issue of the plaintiff's freedom from contributory or comparative negligence, which the defendant can controvert by a denial, or the claim against the defendant can be said merely to put the defendant's conduct in issue, which means that the defendant must interpose an affirmative defense under Rule 8(c) if he wishes to raise an issue as to the plaintiff's contributory or comparative negligence. Neither conclusion is inevitable"). Rather than make any affirmative pronouncements, I merely conclude now that both parties advance non-frivolous arguments in support of their positions.

Rule 37(c)(1) does not require preclusion if the untimely disclosure was "substantially justified or is harmless". "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." Paulus v. Holimont, Inc., 315 F.R.D. 13, 17 (W.D.N.Y. 2016). Moreover, "[c]ourts in the Second Circuit consider four factors on a motion to preclude expert testimony: (1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." In re Zimmer, 2021 WL 1405185, *3 (S.D.N.Y. 2021) (citing Softel, Inc. v. Dragon Medical and Scientific Communications, 118 F.3d 955, 961 (2d Cir. 1997)).

As the parties have both offered good-faith explanations for the timing of these expert disclosures, I find the first factor satisfied. As to the second, there is no dispute that these reports concern important issues of liability to be resolved at trial. Third, as each party has offered an expert on the topic of Solar Liberty's installation practices, I fail to see how either is prejudiced if both are allowed to offer testimony. Moreover, "[p]rejudice can be cured by

allowing the movant to challenge the expert's testimony through depositions and Daubert motions." Id. (citations omitted).

Finally, while I am disinclined to grant further extensions of the discovery deadlines in light of the number of previous extensions, I will set a further conference to discuss whether any further extension should be entertained to allow for the submission of surrebuttal reports, as well as to set new deadlines for the remaining portions of discovery.

## C.    The Besaw Report

Lastly, Solar Liberty moves [243] to partially preclude the expert report of Kelly Besaw. Mr. Besaw (an accountant) indicates that he was retained "to provide expert analysis regarding the determination of damages, if any, sustained by the Plaintiff" and to review the expert reports issued by Blasi and Andreis. [243-8] at 3. Mr. Besaw opines that some of Solar Liberty's alleged damages were attributable to certain system installation issues unrelated to the defective AE 3TL inverters. [243-8] at 10-11. These conclusions were based on deposition testimony from Allegro Power Master Electrician Michael Smith. Id.

I conclude that this report is largely responsive to Solar Liberty's proposed proof and is thus timely. Therefore, the Solar Liberty's motion to preclude Mr. Besaw's report and testimony is denied.

## CONCLUSION

For these reasons, Advanced Energy's motion [242] is granted to the extent it seeks preclusion of Steven Hall's expert report and testimony but is otherwise denied, and Solar Liberty's motion [243] is denied. A teleconference to set final discovery deadlines is set for August 3, 2026 at 10:00 a.m. To access the teleconference, the parties shall dial 716-764-9100 and enter conference ID code 121 573 632# sufficiently in advance of the conference.

SO ORDERED.

Dated: July 24, 2026

<u>/s/ Jeremiah J. McCarthy</u>
JEREMIAH J. MCCARTHY
United States Magistrate Judge